**Stephen MARMOTT; Irene Marmott; Irene Lumber and Supply, Inc. (a Virginia corporation), Appellants,**

**v.**

**MARYLAND LUMBER COMPANY (a Maryland corporation); Milling, Drying and Treating, Inc. (a Maryland corporation); James Kolker; Fabian Kolker, Appellees. (Two Cases)**

Nos. 85–2344(L), 86–3950.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 8, 1986.

Decided Dec. 22, 1986.

Joseph H. Sharlitt (Daniel M. Twomey, Hessey & Hessey, on brief), for appellants.

Glenn M. Cooper (Keith A. Minoff, Paley, Rothman & Cooper, Alan I. Baron, Finley, Kumble, Wagner, Heine, Underberg, Manley & Casey, on brief), for appellees.

Before ERVIN, CHAPMAN and WILKINS, Circuit Judges.

ERVIN, Circuit Judge:

This is an appeal from summary judgment in a case involving an aborted "merger" of two closely-held lumber companies. Plaintiff-appellants Stephen Marmott, his wife Irene Marmott, and their company, Irene Lumber and Supply Co., Inc. (hereafter referred to collectively as "Marmott"), brought suit against James and Fabian Kolker, their company, Maryland Lumber Co., and a subsidiary of Maryland Lumber called Milling, Drying and Treating, Inc. (collectively hereafter "the Kolkers") over an alleged merger agreement reached in a meeting on December 19, 1981. Marmott claims that the parties agreed to merge and that Fabian Kolker agreed to memorialize the merger and handle the necessary legal details, but that the Kolkers never produced the written agreement and instead breached the contract in March, 1982.

The District Court for the District of Maryland entered summary judgment against Marmott on December 9, 1985. The court found that the purported contract was fatally vague as a matter of Maryland law;[1] that its enforcement was barred by the statute of limitations; and that Marmott's other claims, which had both common-law and statutory components,[2] were inadequate as a matter of law. We conclude that the district court was correct in finding that no contract existed and that the Marmott claim for interference with business relations fails. On those grounds, we affirm the summary judgment below.

I.

In 1981, Irene Lumber was a small, recently-started wholesale lumberyard located in Alexandria, Virginia. Its inventory of lumber and building supplies was worth a few thousand dollars. Stephen Marmott founded it and generally made its business decisions. He and his wife owned over seventy percent of the stock; the remainder was owned by his wife's parents. Stephen Marmott was apparently an experienced lumberyard manager, claiming for himself over fifteen years as principal operating officer of a New York City lumber company and a Florida retail lumber company.

Maryland Lumber, headquartered in Baltimore, was founded by Fabian Kolker's father in 1908. It had a much larger inventory and staff than did Irene Lumber. At the times involved in this case, it was owned equally by Fabian and his brother, M. Budd Kolker. Fabian was the president. His son, James, had been involved in company management for eight years. James, however, owned no stock and was not on the board of directors.

From June until the problematic meeting in December, 1981, Marmott operated in a distributorship arrangement with the Kolkers. Irene Lumber would solicit sales and place orders with Milling, Drying and Treating, the Maryland Lumber subsidiary. Milling, Drying and Treating did the bookkeeping and billing and paid a commission to Marmott. Both parties felt dissatisfied with the arrangement, so a meeting was called for December 19. The crux of this dispute concerns the nature of the new relationship, if any, agreed upon at that meeting.

Marmott claims that, at this meeting, he reached an oral agreement with Fabian and James Kolker to "merge" their businesses. The terms of this ostensible merger gave Marmott an option to purchase up to ten percent of the stock of Maryland Lumber

---

1. The magistrate in the case recommended that Maryland law control all state-law aspects of the case, and the parties have not contested that choice of law.

2. The common-law actions were for intentional interference with business relations and defamation; the statutory action was brought under Va.Code § 18.2–499 (1980), which proscribes conspiracies to injure the trade, business or profession of another.

at the end of 1982. Marmott suggested in a deposition that he was entitled eventually to purchase up to fifty percent of Maryland Lumber's stock. The price was to be agreed on later, based on the relative financial performance of the Kolkers in Maryland and Marmott in Virginia during the 1982 calendar year. Marmott further claimed that he was to receive a share of profits in the merged entity worth approximately $250,000 a year. He maintained that Fabian Kolker agreed at the meeting to put all of this into writing. That step was never taken.

In defense of his understanding of the meeting's import, Marmott produced a document labeled "Minutes of Special Meeting" (hereafter occasionally referred to as "Minutes") which outlines, in nine short paragraphs, some features of a merger between Maryland Lumber and Irene Lumber. The "Minutes" were based on notes made by Stephen Marmott's father-in-law, who had also attended the meeting. They were typed by Stephen Marmott's mother-in-law sometime after the meeting. They were not shown to the Kolkers, however, until the following March.

In the meantime, Marmott made some changes in his business immediately after the December 19 meeting: he began answering the telephone as "Maryland Lumber of Virginia" rather than "Irene Lumber & Supply"; he began to be paid directly by Maryland Lumber; and he received employees, equipment, and a substantial amount of inventory from the Kolkers. Maryland Lumber paid Marmott a salary of $600 per week, later converted to a $600 draw against commissions. Marmott styles this and his other actions after the December 19 meeting as partial or full performance of the merger agreement. The Kolkers point out that these actions are just as consistent with an agreement on their part to hire Marmott as a Maryland Lumber employee, which is essentially the

outcome they attribute to the December 19 meeting.

During this time, Irene Lumber & Supply Co. continued to exist as a legal entity. No notices, still less articles of merger,[3] were filed with any governmental authorities. No leases were assigned; none of Marmott's equipment was transferred to Maryland Lumber.

In early March, Stephen Marmott inquired about changing Irene Lumber's telephone listing to Maryland Lumber, and an employee of the telephone company informed him that certain legal papers were needed to make such a change. At the suggestion of James Kolker, Marmott went to a local attorney to have the necessary papers drawn up. The attorney was unsure, on the basis of the "Minutes of Special Meeting," how the parties desired to structure the "merger." He advised Marmott about the differences between a joint venture and a merger and asked Marmott to inquire of the Kolkers what exactly they had envisioned on December 19. Marmott thereupon sent a piece of paper with two columns, one labeled "Joint Venture" and the other labeled "Merger," to the Kolkers. When he received this paper, James Kolker called Stephen Marmott to a meeting in Baltimore.

At this meeting, on March 13, 1982, Marmott showed the "Minutes" to the Kolkers for the first time. James Kolker informed Marmott that the "Minutes" did not represent the arrangement that they had discussed. Four days later, the Kolkers removed all their documents from the Alexandria lumberyard, notified Stephen Marmott that his employment was terminated, and attempted to remove their inventory. Marmott refused to give up the inventory until the Circuit Court of the City of Alexandria issued an order, on October 22, 1982, declaring the Kolkers' right of replevin for the lumber. Marmott alleges that, meanwhile, the Kolkers were calling some

---

**3.** Maryland, like every other state in this circuit, has a statutory procedure for corporate mergers. It requires, among other things, that articles of merger be filed with the proper governmental authorities before a merger is effective. *See* Md.Corps. & Ass'ns Code Ann. § 3–107

(1985). Any putative merger would be legally unenforceable unless and until the statutory requirements were satisfied. *Cf. Prince George's Country Club v. Edward R. Carr, Inc.,* 235 Md. 591, 202 A.2d 354 (1964) (statutory requirements must be met to effect a sale of all assets).

of his customers and telling them not to buy supplies from him, saying that his lumber was stolen. This allegation forms the basis of Marmott's claim for interference with business relations.

## II.

We review the events of the December 19, 1981 meeting and the problems that subsequently arose mindful of the well-established principles of summary judgment. *See generally Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985). In particular, the facts and inferences to be drawn from the facts must be viewed in the light most favorable to Marmott, as the party opposing the summary judgment motion. *See United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). But settled principles of contract law and state requirements for consummating mergers limit the range of possible inferences that can be drawn from Marmott's allegations. *Cf. First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 280, 88 S.Ct. 1575, 1588, 20 L.Ed.2d 569 (1968) (antitrust case). Although disputes about contract formation most often raise issues to be resolved by a factfinder, rather than on summary judgment, *see Charbonnages de France v. Smith,* 597 F.2d 406, 414–15 (4th Cir.1979), in this case the facts as pleaded by Marmott and supplemented by the exhibits before the district court clearly eviscerate Marmott's claim that a merger agreement existed. The record, taken as a whole, demonstrates that a rational trier of fact could not find for Marmott. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* —— U.S. ——, 106 S.Ct. 1348,

89 L.Ed.2d 538 (1986), *rev'g* 723 F.2d 238 (3d Cir.1983).

 The parties' agreement was too vague to be deemed a contract. It is a well-settled tenet of Maryland law that a verbal or written agreement is not valid unless "the parties express themselves in such terms that it can be ascertained to a reasonable degree of certainty what the agreement meant. If the agreement is so vague and indefinite that it is not possible to collect from it the full intention of the parties, it is void." *Strickler Engineering Corp. v. Seminar, Inc.,* 210 Md. 93, 122 A.2d 563, 568 (1956) (collecting cases).

The "Minutes" state only that Irene Lumber "is to be merged with and become an integral part of Maryland Lumber ... under a new name that shall be determined at a future time." Marmott contends that the pattern of business conducted immediately after the December 19 meeting constitutes both evidence of the intended structure of the "merger" and partial performance of the contract.[4] The inference is much stronger that nothing approximating a merger occurred. *Cf. Cities Service Co.,* 391 U.S. at 280, 88 S.Ct. at 1588 (finding inferences urged by movant more probable than those urged by party opposing a summary judgment motion in antitrust case). Irene Lumber kept its corporate existence throughout these events. No attempt was made to comply with the statutory merger procedure in either Maryland or Virginia. Stephen Marmott was never paid according to the terms of the "Minutes of Special Meeting."

The claimed stock option agreement was also imprecise. The "Minutes" state only

---

**4.** The partial performance issue was raised in response to the Kolkers' invocation of the statute of frauds defense. The district court found the agreement subject to the Maryland *infra annum* statute of frauds, *see* Md.Ann.Code art. 39C, § 1(3) (1982), because Marmott's share in the alleged stock option agreement was to be calculated based on the next calendar year's profits. The district court also held that the agreement was subject to the special statute of frauds in Article 8 of the Maryland Commercial Code, *see* Md.Com.Law Code Ann. § 8–319 (1975). Because we find the agreement to be fatally vague as a matter of law, we do not

reach the statute of frauds defense in our holding. We note in passing, however, that a number of courts have refused to apply the provisions of Article 8 of the Uniform Commercial Code to the stock of small, closely-held corporations without a detailed inquiry into the nature of the shares. The essential question is whether the shares are "of a type commonly dealt in upon securities exchanges...." *Id.* § 8–102. *See Zamore v. Whitten,* 395 A.2d 435 (Me.1978); *Gulf Mortgage and Realty Investments v. Alten,* 282 Pa.Super. 230, 422 A.2d 1090 (Pa.Super. 1981); *Kenney v. Porter,* 557 S.W.2d 589 (Tex. Civ.App.1977).

that Marmott "shall be given options to purchase stock in Maryland Lumber ... in an amount and at a price to be determined, not later than January 1, 1983." Marmott sought to make up for the obviously insufficient detail in that provision by setting out a formula for the stock option in an affidavit. In his deposition, however, Stephen Marmott phrased the formula in several slightly, but significantly, different ways. The district court properly concluded that the stock option agreement was unenforceable.

In view of the ambiguity in the structure of the "merged" entity, ambiguity that is heightened by Marmott's uncertainty whether he had agreed on a joint venture or a merger, and further given the uncertainty in the putative stock option agreement, which Marmott stated was integral to the deal, Marmott is essentially asking the court to make this contract for the parties. Maryland courts have steadfastly refused to do this. *See, e.g., Robinson v. Gardner,* 196 Md. 213, 76 A.2d 354, 356 (1950).

Beyond the vagueness in the "Minutes of Special Meeting," as supplemented by the record as a whole, no facts in the case support an inference that the parties manifested their mutual assent to any set of terms. It is essential that the minds of the parties be in agreement on terms in order for a contract to be established. *See, e.g., Klein v. Weiss,* 284 Md. 36, 395 A.2d 126, 141 (1978). The Kolkers' strong disagreement with Marmott's version of the "merger" was evidenced by their quick move to terminate the arrangement entirely when presented with Marmott's "Minutes." Nothing in their actions suggested that the Kolkers assented to a merger of their company with Irene Lumber. In fact, such assent was improbable given the size and age of Maryland Lumber in contrast with the start-up nature of Irene Lumber, which had subsisted for the seven months of its corporate life as a distributor for Maryland Lumber.

In sum, the pleadings, affidavits, and depositions, taken as a whole, show that there is no genuine issue as to whether a contract existed to merge Irene Lumber and Maryland Lumber. The simple phrase "shall be merged" is, by itself, too meager a basis for binding parties contractually. When read together in this case with the evidence that a joint venture, rather than a statutory merger, might have been contemplated, the vagueness of the agreement is greatly increased. The imprecision is further heightened when the agreement, as here, has an integral part—the stock option—that lacks clear price and quantity terms. Together these flaws are sufficient to support summary judgment against Marmott.

### III.

The district court held that Marmott's claims based on common-law interference with business relations and defamation were barred by Maryland's one-year statute of limitations applicable to actions for libel and slander.[5] The court also rejected a claim based on § 18.2–499 of the Virginia Code,[6] which provides that a civil action may be brought for conspiracy to interfere with a business. The court rejected this statutory claim on two grounds. First, the court held that the conspiracy claim was time-barred, because the underlying cause of action was the same one barred by the one-year limitations period for libel and slander. The court reasoned that the form of action should not change the relevant limitations period and that the one-year period should control. Second, the court found that Marmott failed to allege a conspiracy, as required by the statute, because the complaint named only the Kolkers and their company as conspirators. The law is well-settled, and indeed Marmott agrees, that a conspiracy between a corporation and its agents, acting within the scope of their employment, is a legal impossibility. *See, e.g., Nelson Radio and Supply Co. v. Motorola,* 200 F.2d 911, 914 (5th Cir.1952).

---

**5.** *See* Md.Cts. & Jud.Proc.Code Ann. § 5–105 (1984).

**6.** Va.Code § 18.2–499 (1980).

Marmott has not contested the judgment on the common-law claims. On the statutory claim, however, Marmott argues that the one-year limitations period is inappropriate and that the claim is against the Kolkers as individuals as well as agents of Maryland Lumber. Further, Marmott argues that subsection (b) of § 18.2–499 does not require proof of a conspiracy.

 We agree that the district court wrongly applied a one-year limitations period to § 18.2–499. That section has previously been held to have a five-year statute of limitations, because it creates an action that would survive a plaintiff's death at common law. *See Federated Graphics Cos. v. Napotnik,* 424 F.Supp. 291, 294 (E.D.Va.1976). The cases relied on by the court for its reduction of the period to one year involved multiple claims based on common-law forms of action with different limitations periods. When a special statutory cause of action and a common-law cause of action co-exist, and the statutory cause of action has a longer limitations period, the statutory period should prevail. *See* 51 Am.Jur.2d, Limitations of Actions § 62, n. 2 (1970). The case cited by the court for the linchpin proposition that no common law slander claim exists under § 18.2–499 actually distinguishes "personal" from "trade" injuries and suggests that the latter is a valid claim under the statute. *See Moore v. Allied Chemical Corp.,* 480 F.Supp. 364, 374 (E.D.Va.1979). Marmott has clearly alleged a "trade" injury.

Despite this error regarding the relevant statute of limitations, the district court judgment must stand. Marmott has not pleaded concerted action subject to § 18.2–499. There is no claim that the Kolkers were acting outside the scope of their employment in making calls to Marmott's customers. The mere statement that the Kolkers were sued in their individual capacities is not such a claim. *Cf. Nelson Radio,* 200 F.2d at 914 (conspiracy between corporation and its agents requires actions outside scope of employment); *Griffith v. Electrolux Corp.,* 454 F.Supp. 29, 32 (E.D.Va.1978) (same). The Marmott theory that § 18.2–499(b) does not require a showing of concerted action is also without merit. That subsection concerns an attempt by one conspirator to bring a third party into the conspiracy. We assume, for summary judgment purposes, that the Kolkers did call Marmott's customers and did tell them not to buy from Marmott because Marmott was selling "stolen goods." Such a course of action is not an attempt to bring customers into a conspiracy; it is an effort to persuade customers not to do what they already have the right not to do. The customers that the Kolkers called could have had no conspiratorial intent.

Marmott's claim under § 18.2–499 was properly rejected in granting summary judgment to the Kolkers. The error of law concerning the statutory limitations period was harmless, given the alternative grounds for the decision: Marmott failed to allege the existence of a conspiracy to injure him in his business. Since he also failed, as a matter of law, to show that a contract existed to merge his company with Maryland Lumber, the summary judgment below is

AFFIRMED.