852 F.2d 566
 11 Fed.R.Serv.3d 911
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
MARTIN MARIETTA CORPORATION, Plaintiff-Appellee,
v.
FIREMAN'S FUND INSURANCE COMPANY, Defendant-Appellant,
and
Fuller Company; S & W Construction Company of Tennessee,
Inc.; Insurance Company of North America; F & P
Engineers, Inc., Defendants.
MARTIN MARIETTA CORPORATION, Plaintiff-Appellant,
v.
FIREMAN'S FUND INSURANCE COMPANY, Defendant-Appellee,
and
Fuller Company; S & W Construction Company of Tennessee,
Inc.; Insurance Company of North America; F & P
Engineers, Inc., Defendants.
 Nos. 87-3705(L), 87-3706.
 United States Court of Appeals, Fourth Circuit.
 Argued: June 7, 1988.
Decided: July 22, 1988.
 
 D.Md.
 AFFIRMED.
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Alexander Harvey, II, Chief District Judge. (CA-83-2359).
 James Earl Gray, Bruce Robert Parker (H. Thomas Howell, Semmes, Bowen & Semmes, on brief), for appellant.
 Jerold Oshinsky (Lorelie S. Masters, Anderson, Baker, Kill & Olick, on brief), for appellee.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, ERVIN and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 This dispute grows out of a contract for the design and construction of a cement plant in Utah. Martin Marietta Corp. (MMC) sued S & W Construction (S & W) and its surety Firemen's Fund (FF) for breach of contract. The district court granted MMC's motions for summary judgment and directed verdict with respect to FF's counterclaims, but denied them with respect to certain of MMC's claims. The jury returned a verdict for FF on MMC's claims, and for MMC on its claim against R.S. Fling & Partners, Inc.[1] (Fling), a subcontractor on the project. FF appeals and MMC cross-appeals. We affirm the district court in all respects.
 
 I.
 
 2
 In 1979, MMC sought to build a cement plant in Utah. It hired a geotechnical firm to perform subsurface investigations at the site. Those investigations revealed variable soil conditions, including collapsible soils, but it was concluded that construction could proceed at the site if foundations were designed and constructed properly.
 
 
 3
 MMC solicited bids on the project from engineering firms. Fuller Co., one of the bidders, hired Fling to interpret soil data and recommend foundations. When it received the bid, Fuller solicited construction bids from civil engineering contractors. S & W Construction Co. submitted the low bid and entered into a joint venture agreement with Fuller to engineer, construct, and provide equipment for the plant. In February, 1980, the joint venture entered into a contract with MMC for design and construction of the plant. Pursuant to contract, S & W obtained a performance bond from FF which made S & W and FF jointly and severally liable to MMC. Fling was hired as a subcontractor to perform design work.
 
 
 4
 Construction began in June, 1980. In March, 1981, the building was found to have settled several inches, and S & W made repairs. Further settlement appeared in the spring of 1982, and S & W continued to perform remedial work.
 
 
 5
 In 1983, MMC brought suit for breach of contract against, inter alia, Fuller, S & W, and FF. Because S & W had been placed into involuntary bankruptcy, it was severed as a party. FF counterclaimed against MMC for amounts due S & W for remedial work and for damages to S & W allegedly caused by MMC's breach of contract. Fuller impleaded Fling. MMC raised claims against Fling.
 
 
 6
 MMC settled with Fuller and dismissed it from the suit. In August, 1986, MMC moved for summary judgment. The district court granted the motion with respect to FF's counterclaim for punitive damages, but denied it in all other respects. MMC renewed the motion in October, and the court granted it with respect to Counts 2-4 and part of Count 1 of FF's counterclaim.
 
 
 7
 At the close of the evidence, MMC moved for a directed verdict on the remainder of Count 1 of FF's counterclaim and on several of FF's defenses. The district court granted the motion with respect to the counterclaim but denied it with respect to the defenses. The jury returned a verdict for FF on MMC's claims and awarded MMC $2 million against Fling. FF appealed from the district court's grant of summary judgment and directed verdict on its counterclaims. MMC cross-appealed.
 
 II.
 
 8
 FF appeals from the district court's grant of MMC's motions for summary judgment and directed verdict on FF's counterclaims. We affirm.
 
 A. Counts 2-4
 
 9
 FF contends that the district court erred both procedurally and substantively in granting MMC's motion for summary judgment on Counts 2-4 of FF's counterclaim. We disagree.
 
 1. Procedural Error
 
 10
 MMC moved for summary judgment in August, 1986, and the motion was argued on September 19. The district judge granted the motion with respect to FF's claim for punitive damages and denied it without prejudice in all other respects. At about this time, MMC took the depositions of FF's damage experts. On September 29, MMC filed a motion in limine, supported by exhibits which included the deposition testimony of FF's experts, and FF filed a response to that motion.
 
 
 11
 Trial began on October 7, and a jury was impaneled. A recess was taken, during which the motion in limine was considered. The district judge suggested, on the basis of the additional depositions, that MMC renew its summary judgment motion. It did, and the motion was granted with respect to Counts 2-4 of FF's counterclaim and with respect to a portion of Count 1. In granting the motion, the district court relied on the "new" depositions. FF moved the next day for reconsideration, but that motion was denied.
 
 
 12
 FF now argues that the district court erred in failing to give notice that it would consider the motion in limine as a motion for summary judgment and in refusing to allow FF to submit rebuttal evidence. Specifically, FF contends that the district court violated the "10-day rule" of Fed.R.Civ.P. 56(c), which states that a motion for summary judgment shall be served ten days prior to the date of the hearing.
 
 
 13
 FF cites several cases for the proposition that the district court was required to give it "advance indication that a pending motion [would] be treated as a motion for summary judgment, so that [it would be] given reasonable opportunity to file counteraffidavits or other materials." These cases, however, do not involve situations where a court ruled on a pending summary judgment motion that had been denied without prejudice. See Gay v. Wall, 761 F.2d 175, 177 (4th Cir.1985); Brobst v. Columbus Services International, 761 F.2d 148, 153-54 (3d Cir.1985); Davis v. Zahradnick, 600 F.2d 458, 460 (4th Cir.1979).
 
 
 14
 Here, the motion in limine was not converted into a summary judgment motion. Rather, the summary judgment motion, which had been denied without prejudice, was renewed. FF had had ample opportunity to respond to the original motion, and responded to the renewed motion. FF did not object to the failure to follow the ten-day rule at the time the motion was renewed; rather, it argued the motion on the merits. Nor did FF raise this objection in its motion for reconsideration; rather, it asserted that its response to MMC's motion entitled it to a ruling in its favor. The ten-day rule was not violated in these circumstances. See Trustees of Sabine Area Carpenters' Health & Welfare Fund v. Don Lightfoot Home Builder, Inc., 704 F.2d 822, 827-28 (5th Cir.1983).
 
 2. Substantive Error
 
 15
 Counts 2-4 of FF's counterclaim charged that, by wrongly failing to disclose to S & W information pertaining to subsoil conditions, MMC caused S & W to incur losses which, in turn, brought about S & W's insolvency. The district court granted MMC's motion for summary judgment on those counts, holding that the breaches of duty alleged did not proximately cause S & W's insolvency and because S & W's insolvency was not reasonably foreseeable to MMC.
 
 Summary judgment may be awarded:
 
 16
 [A]gainst a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.
 
 
 17
 Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Librty Lobby, Inc., 477 U.S. 242, 251-52 (1986).
 
 
 18
 FF conceded before the district court that proximate causation and reasonable foreseeability were essential elements of its claims in Counts 2-4. Because FF failed to make a showing sufficient to establish these elements, the district court properly granted MMC's motion for summary judgment.
 
 
 19
 The evidence before the district court showed that factors other than MMC's alleged breaches caused S & W's insolvency. The district court found that S & W's sales declined from $58 million in 1981 to $33 million in 1982 to "practically no business" in 1983. It found that S & W's involvement in two other jobs, Dal-Tex and Sugartop, played "major roles" in causing the bankruptcy. An internal report by FF indicated that S & W spent "an exorbitant amount of time and money," including "substantial unrecoverable costs ... for the design, estimating, and engineering phases" of these two projects which "never materialized." According to the report "[o]verhead increased tremendously when [S & W] hired many high priced salesmen, engineers and estimators in preparation for the Dal-Tex job." The report attributed the decline in S & W's business from 1981 to 1982 to S & W's decision to "bypass" other contracts in pursuit of the Dal-Tex and Sugartop jobs. It also questioned S & W's decision to move its operations, after completing the MMC job at "tremendous profits," from Memphis to Utah. The report notes that S & W paid employees' moving expenses and "handled their mortgages at low rates." In view of these factors, the district court properly concluded that it was "pure speculation" to claim that MMC's alleged breaches caused S & W's insolvency.
 
 
 20
 FF seeks to minimize the importance of these other factors by arguing that there may be more than one proximate cause of an injury, and that MMC's alleged offenses, as "substantial factors," proximately caused S & W's insolvency. However, it is a fundamental tenet of tort law that a party's conduct is not the proximate cause of an event if the event would have occurred in the absence of such conduct. W. Prosser, Law of Torts Sec. 41 (4th ed. 1971). Indeed, FF requested a jury instruction stating that an injury is proximately caused by an act if it appears that "but for" the act the injury would not have occurred. Given the myriad of factors discussed above, it cannot be said that any of the breaches complained of in Counts 2-4 was the proximate cause of S & W's bankruptcy.
 
 
 21
 Furthermore, FF was required to prove, as an essential element of its claim, that its injury was reasonably foreseeable to MMC. Even if MMC committed the acts complained of, financial ruin of an apparently sound company is not normally a foreseeable consequence of those acts. See Held Construction Co. v. Michigan National Bank, 124 Mich.App. 472, 335 N.W.2d 8, 10 (1983). FF urges that it was not required to prove that its insolvency was foreseeable, but only that "the actual harm fell within a general field of danger which should have been anticipated." Segerman v. Jones, 256 Md. 209, 259 A.2d 794, 805 (1969). However, the actual harm complained of here, insolvency, falls outside the scope of the general field of danger foreseeably arising from a breach of contract.
 
 B. Count 1
 
 22
 FF also contends that the district court erred in granting MMC's motion for summary judgment on a portion of Count 1 of its counterclaim, and in granting MMC's motion for directed verdict on the remainder of that count. Again, we disagree.
 
 
 23
 In Count 1, FF claimed that MMC had failed to pay amounts due for remedial work performed by S & W pursuant to an oral contract between S & W and MMC. FF sought $2.2 million which it claimed had been invoiced on a "time and material" basis. FF also sought $5.4 million which it claimed represented the additional amount S & W could have billed MMC had it been permitted to receive a "fair return" for the work. FF claims that invoicing the $5.4 million was deferred pursuant to the oral agreement.
 
 
 24
 According to FF, when settlement began to appear in the summer of 1982, S & W performed remedial work at the request of MMC. FF contends that MMC orally guaranteed to pay S & W for the remedial work, assuring S & W that it would not "get hurt." After S & W had incurred substantial expenses in performing this work, S & W, Fuller, MMC, and Fling's insurer entered into a "pooling agreement" whereby each contributed $1 million to fund remedial work, reserving their rights to later seek reimbursement. The agreement called for S & W to be paid on a "time and material" basis.
 
 
 25
 After this $4 million pool was exhausted, according to FF, S & W continued to incur remedial expenses. FF claims that S & W told MMC of the severe strain this was causing on its cash flow, and that in response, MMC threatened to default S & W on its bond if S & W refused to continue.
 
 
 26
 The district court entered summary judgment with regard to the $5.4 million claim. It held that the August, 1982 pooling agreement, which called for S & W to perform remedial work on a "time and material" basis, precluded a claim for a "fair return." At the close of the evidence, the court granted MMC's motion for directed verdict, holding that the purported oral agreement under which FF raised its claim was insufficiently definite to constitute a contract. It also held that evidence of the agreement was barred by the parol evidence rule. We affirm.
 
 
 27
 A verbal or written agreement is not a valid contract unless:
 
 
 28
 the parties express themselves in such terms that it can be ascertained to a reasonable degree of certainty what the agreement meant. If the agreement is so vague and indefinite that it is not possible to collect from it the full intention of the parties, it is void.
 
 
 29
 Marmott v. Maryland Lumber Co., 807 F.2d 1180, 1183 (4th Cir.1986) (applying Maryland law). The district court here afforded all inferences to FF's evidence, yet still found the purported oral agreement too indefinite to constitute a contract. It did not err in doing so.
 
 
 30
 FF's claim is based primarily on the testimony of W.C. Jenne, chairman and chief executive officer of S & W. Jenne testified that he was assured by Philip Sendel, president of Martin Marietta Cement, and by Mr. Pounall, chairman of the board of MMC, that S & W would not "get hurt" if it performed the remedial work. He was unable to provide further details of this purported "contract," and was unable to state precisely when he received these assurances. As the district court found, there was no indication as to the amounts of payments or their basis, and there was no indication when payments would be made. Jenne's testimony was too vague, as a matter of law, to be submitted to the jury on the question of the existence of a contract.
 
 
 31
 FF also argues that the district court erred in failing to consider Exhibit 560 in making this determination. That exhibit consisted of a draft of a letter from Sendel to Elmer Gates, president of Fuller Co., which stated, "we have no practical alternative to guaranteeing reimbursement to S & W on a time and material (no profit) basis." The document did not indicate whether Sendel had signed or sent the letter. The district court refused to admit the document into evidence because FF had failed to lay any foundation by questioning Sendel about it. FF argues that this was error because the Federal Rules of Evidence do not require evidence to be "sponsored" by a witness and because the document constituted an admission. The district court was correct in excluding the document, however, because in the absence of any identification by Sendel it could not be determined that the document was indeed an admission. The draft may not have been written by Sendel, and in the absence of his signature or any testimony on the question, there was no indication that he made or adopted the statements made therein.
 
 
 32
 Finally, the district court held that the parol evidence rule barred evidence of the purported oral agreement in contradiction of the written, August, 1982 pooling agreement. Again, we find no error in this ruling.
 
 
 33
 The parol evidence rule bars evidence of prior agreements which contradicts the terms of an integrated written agreement. See Restatement (Second) of Contracts Secs. 209, 213 (1981). Where a document appears on its face to be complete and unambiguous, it is presumed to be integrated. Id. Sec. 209(3). The question of integration is for the court to determine. Id. Sec. 209(2).
 
 
 34
 The pooling agreement was entered into after the alleged oral agreement was reached. It called for MMC, S & W, Fuller, and Fling's insurer to contribute $1 million each to fund remedial repairs. It continues, in pertinent part:
 
 
 35
 (2) Such contributions will be subject to a full reservation of rights by each party and shall not constitute an admission of responsibility or liability by any party, it being expressly understood that all parties reserve their rights to make claims against one another for recovery of remedial costs.
 
 
 36
 * * *
 
 
 37
 * * *
 
 
 38
 (4) Such work will be performed by S & W on a time and material basis ...
 
 
 39
 FF claims that the reservation of rights in paragraph (2) of the pooling agreement illustrates that the agreement was not, in fact, integrated, and argues that the district court therefore erred in applying the parol evidence rule.
 
 
 40
 As the district court found, however, the reservation of rights paragraph clearly referred only to the parties' right to seek reimbursement of their contributions in the event that they were later found not liable for the cost of remedial work. It is not ambiguous and does not permit S & W to sue for work done on the basis of an alleged oral promise.
 
 III.
 
 41
 In its cross-appeal, MMC argues that the district court erred in failing to grant its motion for summary judgment and directed verdict on the question of S & W's (and FF's) responsibility for negligent design and for extra quantities. MMC also contends that the district court's instructions created jury confusion. We find no merit in either argument.
 
 A.
 
 42
 MMC asserts that in the February, 1980 contract between MMC and the joint venture formed by Fuller and S & W, S & W agreed to perform the foundation design. MMC argues that because the jury found S & W's subcontractor, Fling, negligent in designing the plant, MMC was entitled to judgment as a matter of law on its claim that S & W bore design responsibility. Because the contract was ambiguous on the allocation of design responsibility, however, the district court did not err in submitting the issue to the jury.
 
 
 43
 The February, 1980 contract calls for Fuller and S & W to be severally liable to MMC, and can reasonably be read to impose design responsibility on Fuller. The Division of Responsibilities, which was incorporated into the February, 1980 contract, lists Fuller as responsible for concrete foundation design. Furthermore, in Paragraph 13(e) of the February, 1980 contract, Fuller alone warranted the design of the plant. In view of the contract's ambiguity on this point, the district court did not err in submitting the question to the jury.[2]
 
 
 44
 MMC points to language in the February, 1980 contract stating that "Contractor shall be as fully responsible to Owner for the acts and omissions of any of its Subcontractors ... as Contractor is for its own acts or omissions," and contends that, because S & W subcontracted the design work to Fling, S & W is liable for Fling's negligent design. The February, 1980 contract, however, defines "Contractor" to include both S & W and Fuller.
 
 B.
 
 45
 An amendment to the joint venture agreement states that S & W would "have the responsibility for any extra quantities due to any unforeseen foundation and/or subsoil conditions." MMC asserts that by this language S & W assumed the financial risk of repairs necessitated by faulty foundation design. MMC argues that this "plain language" required the district court to direct a verdict in its favor on the issue of whether S & W was liable for extra quantities required for repairs at the plant.
 
 
 46
 The "plain language" of that provision, however, does not include any reference to repairs. It could reasonably be read to refer only to extra quantities needed in the original construction. In view of this ambiguity, it was not error for the district court to deny MMC's motion for directed verdict.
 
 C.
 
 47
 The jury found that Fling did not breach its contract with S & W, but found that Fling "was negligent in the engineering work it did" in connection with the plant. MMC claims that these findings are irreconcilably inconsistent because Fling could not have performed its subcontract with S & W properly while breaching its duty of care. Fling, however, performed "engineering work" at the plant under two contracts, one dated April 30, 1979 with Fuller, and one dated February 13, 1980 with S & W. The first called for Fling to perform preliminary geotechnical engineering, and the second called for Fling to design the plant. The jury could have found that Fling did not breach the latter, but that Fling was negligent in performing the former. Because the jury's verdict can be read to be internally consistent, we decline to set it aside.
 
 IV.
 
 48
 We find no error in the district court's rulings on the motions involved in this appeal and cross-appeal. Its judgment is therefore
 
 
 49
 AFFIRMED.
 
 
 
 [1]
 Fling later became F & P Engineers, Inc
 
 
 [2]
 MMC also raises a third-party beneficiary argument, claiming that FF is liable to it for negligent design even if S & W's design responsibility ran only to Fuller because MMC was "the direct beneficiary of S & W's work." MMC cites cases in which a surety was held liable to a third party, even though the surety's principal was not contractually liable to the third party. See M.H. Walker Realty Co. v. American Surety Co., 60 Utah 435, 211 P. 998 (1922); United States v. Phoenix Indemnity Co., 231 F.2d 573 (4th Cir.1956). These cases are irrelevant, however, because MMC was the obligee on FF's bond in this case. FF's liability to MMC under the bond was coextensive with S & W's, and FF could therefore be responsible to MMC for negligent design only if S & W were found responsible to MMC