TECART INDUSTRIES, INC., Plaintiff,

v.

NATIONAL GRAPHICS,
INC., Defendant.

No. CIV. H–01–1537.

United States District Court,
D. Maryland.

Jan. 14, 2002.

Peter J. Axelrad, Susan Stobbart Shapiro, Council, Baradek, Kosmerl & Nolan, P.A., Annapolis, MD, for Plaintiff.

Ronald H. Jarashow, L. Dale Burgmeier, Franch, Jarashow, Burgmeier and Smith, PA, Annapolis, MD, for Defendant.

*MEMORANDUM AND ORDER*

ALEXANDER HARVEY, II, Senior District Judge.

In this civil action, plaintiff TecArt Industries, Inc. ("TecArt") has sued defendant National Graphics, Inc. ("National Graphics") seeking specific performance of an alleged agreement between the parties and also damages for breach of contract. It is alleged in the complaint that the parties entered into a valid and enforceable contract pursuant to which plaintiff TecArt agreed to purchase certain assets of a division of defendant National Graphics. Plaintiff alleges that defendant refused to proceed with the sale and thereby breached the contract. In Count I of the complaint, plaintiff requests that the Court enter a judgment specifically enforcing the alleged agreement. Count II seeks a recovery of $500,000 for breach of contract. Diversity jurisdiction exists under 28 U.S.C. § 1332(a).

Pursuant to Scheduling Orders entered by the Court, the parties have engaged in discovery. Presently pending in the case is a motion for summary judgment filed by defendant National Graphics. Memoranda and exhibits in support of and in opposition to the pending motion have been submitted by the parties. The exhibits include affidavits and excerpts from depositions taken during discovery. A hearing on the pending motion has been held in open court. For the reasons stated herein, defendant's motion for summary judgment will be denied.

I

*Background Facts*

Plaintiff TecArt is a Michigan corporation with its principal place of business in Farmington Hills, Michigan. TecArt manufactures interior "backlit" signs which are illuminated signs that are an alternative to neon lighted ones. TecArt manufactures one line of aluminum and one line of plastic backlit signs.

Defendant National Graphics is a Maryland corporation with its principal place of business in Baltimore. National Graphics manufactures, in addition to other products, over thirty different lines or sizes of plastic backlit signs in its Backlit Sign Division. There have been business dealings between the parties for a number of years. Since 1998, TecArt has purchased some of its plastic backlit signs from National Graphics. In 1998, representatives of TecArt made an offer to purchase the lighting division of National Graphics. That offer was rejected.

In February of 2001, representatives of the parties resumed negotiations for the purchase by TecArt of the Backlit Sign Division of National Graphics. There were discussions between Bob Krohn ("Krohn"), who was General Manager and a minority owner of National Graphics, and H. Halstead Scudder ("Scudder"), who was Chairman, CEO and President of TecArt. On March 7, 2001, Scudder sent a letter to Krohn enclosing a copy of a "Letter of Intent" relating to the purchase by TecArt of National Graphics' "Lighting Division." Enclosed was a six-page "Binding Letter Agreement" signed by Scudder and Barry Shapiro ("Shapiro")[1] and addressed to Krohn and Earl Seth, Jr. ("Seth").[2] In that document, Scudder and Shapiro, "on behalf of an entity to be formed," proposed to purchase a one hundred percent "equi-

---

1. Shapiro is an officer and director of TecArt. There were only two members of TecArt's board of directors, namely Scudder and Shapiro.

2. Seth is President of National Graphics.

ty" interest in the Lighting Division of National Graphics. The acquisition was to be structured as an "Asset Purchase."

The terms of the letter agreement of March 7, 2001 were not acceptable to Krohn and Seth. There were further negotiations, and by letter dated March 28, 2001, Scudder and Shapiro sent to Krohn and Seth revised copies of the "Letter of Intent." The enclosed letter agreement was dated March 29, 2001 and was characterized as "this Revised Binding Letter Agreement" (hereinafter "the March 29 Document"). On April 5, 2001, Krohn, Seth and three other owners of National Graphics [3] signed the March 29, 2001 Document and agreed to its terms. In its complaint, plaintiff TecArt characterizes that Document as a binding agreement which has been breached by National Graphics.

Paragraph 4 of the March 29 Document stated that National Graphics would receive a 4% royalty on the sales of all of its Division's backlit sign products, payable monthly for a period of five years. In Paragraph 5, the parties "contemplate[d]" TecArt entering into a Consulting Agreement with Krohn. Paragraph 6 required TecArt as the purchaser to prepare a formal Purchase Agreement. The parties agreed to make "a best effort" to complete the described transaction and "to do all reasonable and necessary things" to cause the contemplated transaction to proceed to close not later than May 15, 2001. On April 24, 2001, a proposed Purchase Agreement was sent by Scudder to National Graphics.[4]

Discussions then continued between the parties with reference to various terms and conditions contained in the Purchase Agreement. In particular, the parties disagreed as to the royalty payments to be made by TecArt to National Graphics. Various letters and faxes were exchanged, but on May 11, 2001, communications between the parties broke down. No formal Purchase Agreement was ever executed, and there was no closing held on May 15, 2001.

This civil action was filed in this Court on May 29, 2001. On June 1, 2001, defendant entered into an agreement to sell 35% of its outstanding stock and certain equipment to a company known as Bowman Photographic ("Bowman"). According to plaintiff, this transaction involved the sale to Bowman of virtually all of the equipment to be purchased by TecArt under the March 29 Document.

Plaintiff TecArt contends that it was ready, willing and able to perform under the terms of the so-called March 29 Document and that National Graphics has breached this agreement by refusing to complete the sale of the assets of its Backlit Sign Division to TecArt. In moving for summary judgment, defendant National Graphics contends that the letter agreement sent by Scudder and Shapiro to Krohn and Seth on March 29, 2001 is merely a letter of intent and is not an enforceable contract.

## II

### *Summary Judgment Principles*

The principles to be applied by this Court in considering a motion for summary judgment under Rule 56, F.R.Civ.P., are well established. A party moving for summary judgment bears the burden of showing the absence of any genuine issue

---

**3.** It appears that the stock of National Graphics was owned by five shareholders.

**4.** Seth and Krohn both testified that they did not receive the proposed · Purchase Agreement.

of material fact and that the movant is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.,* 736 F.2d 946, 958 (4th Cir.1984). Where, as here, the nonmoving party will bear the ultimate burden of persuasion at trial, "the burden on the moving party [at the summary judgment stage] may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In *Phoenix Sav. & Loan, Inc. v. Aetna Cas. Co.,* 381 F.2d 245, 249 (4th Cir.1967), the Fourth Circuit Court of Appeals summarized the principles applicable under Rule 56 as follows: "It is well settled that summary judgment should not be granted unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." *Id.* Hence, the party opposing a motion for summary judgment is entitled to all favorable inferences which can be drawn from the evidence. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Cram v. Sun Ins. Office, Ltd.,* 375 F.2d 670, 674 (4th Cir.1967).

The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact. *Barwick,* 736 F.2d at 958. This burden is met by consideration of affidavits, exhibits, depositions and other discovery materials. *Id.* Nevertheless, "[t]he facts, and the inferences to be drawn from the facts, must be viewed in the light most favorable to the party opposing the motion." *Ballinger v. North Carolina Agric. Extension Serv.,* 815 F.2d 1001, 1004–05 (4th Cir.1987), *cert. denied,* 484 U.S. 897, 108 S.Ct. 232, 98

L.Ed.2d 191 (1987) (citing *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985)).

Applying these principles to the facts of record here, this Court has concluded that defendant's motion for summary judgment must be denied.

### III

### *Discussion*

### (a)

### *Real Party in Interest*

Defendant National Graphics first contends that it is entitled to summary judgment in this case because plaintiff TecArt was not a party to the March 29 Document which is the subject of this action. According to defendant, plaintiff TecArt has no right to enforce this alleged agreement because it was executed by Scudder and Shapiro "on behalf of an entity to be formed."

Presumably, defendant is here claiming that plaintiff TecArt has not complied with Rule 17(a), F.R.Civ.P., which provides: "Every action shall be prosecuted in the name of the real party in interest." There is no merit to defendant's contention. Under Rule 17(a), a party in whose name a contract had been made for the benefit of another may sue in that person's own name without joining the party for whose benefit the action is brought. The March 29 Document is written on a TecArt letterhead. In the first paragraph, it is indicated that "TecArt Industries, on behalf of an entity to be formed" is the purchaser under the document. The letter is signed by Scudder and Shapiro who are the only two board members of TecArt. No other entity was ever formed, and therefore only TecArt can be considered to be the other contracting party. Under these circumstances,

TecArt may under Rule 17(a) proceed as the plaintiff in this case.

■ It is further argued that the alleged agreement is not a binding one because no directors or stockholders' meeting was held to approve the action taken, as required by Michigan law. This contention is likewise meritless. Both members of the TecArt Board of Directors executed the document, and Michigan law merely requires that the business and affairs of a corporation shall be managed by or under the direction of its Board. Mich. Com. Laws § 450.1501 (2001). The fact that no formal meeting of the Board of Directors was held does not under the circumstances here require a determination that the corporate entity TecArt is not a formal party to the March 29 Document at issue.

### (b)

### *Nature of the Agreement*

The essential dispute in this case arises as a result of the parties' characterization of the March 29 Document. According to defendant, the alleged agreement was merely a letter of intent which cannot form the basis for this breach of contract suit. Plaintiff TecArt, on the other hand, asserts that a binding and enforceable agreement was reached between the parties when the shareholders of National Graphics executed the March 29 Document on April 5, 2001.

In recent years, this Court has on several occasions had before it cases requiring it to determine whether documents executed by the parties were merely letters of intent or were binding agreements. In *Phoenix Mut. Life Ins. Co. v. Shady Grove Plaza Ltd. Partnership,* 734 F.Supp. 1181 (D.Md.1990), *aff'd* 937 F.2d 603, 1991 WL 125666 (4th Cir.1991), this Court, in granting defendant's motion for summary judgment, concluded that no binding agreement was reached by the parties because

the document at issue was merely a letter of intent. *Abt Assocs., Inc. v. JHPIE GO Corp.,* 104 F.Supp.2d 523 (D.Md.2000), *aff'd* 9 Fed.Appx. 172 (4th Cir.2001), involved a question whether certain agreements executed by the parties amounted to a binding contract which defendant had breached. In granting summary judgment in favor of the defendant in *Abt,* the Court concluded as a matter of law that no binding and enforceable agreement was ever reached between plaintiff and defendant whereby plaintiff would be entitled to participate in a health care program. More recently, in *Paramount Brokers, Inc. v. Digital River, Inc.,* 126 F.Supp.2d 939 (D.Md.2000), a "letter of interest" was at issue. In granting summary judgment in favor of the defendant, the Court concluded that no final binding writing was ever executed by the parties and determined as a matter of law that the parties never throughout the course of their negotiations reached an agreement which required defendant to pay commissions to Paramount over a period of years.

■ In all three of those cases, the Court cited with approval *Teachers Ins. & Annuity Ass'n v. Tribune Co.,* 670 F.Supp. 491 (S.D.N.Y.1987). The *Teachers* court outlined five factors to be considered in determining whether the facts of a case revealed an intent by the parties to be bound by a written document. These factors are as follows: (1) the language of the agreement; (2) the context of the negotiations; (3) the existence of open terms; (4) partial performance; and (5) the custom of such transactions. *Id.* at 499–503.

Relying on *Phoenix, Abt* and *Paramount Brokers,* defendant National Graphics contends that the March 29 Document is, like the written documents in those cases, merely a letter of intent which did not constitute a binding agreement

between the parties. Plaintiff TecArt in turn asserts that the facts here are similar to those present in *Teachers* where the Court concluded that the letter of intent at issue was an enforceable contract.

█ From the Court's review of the cases cited by the parties, it is quite apparent that the decision in a case like this one must be based on the particular facts before the Court. Whether the parties negotiating a contract intended to be bound by a prior writing or whether they did not intend to bind themselves until a formal agreement was prepared and signed by them must be determined from the facts and circumstances in each particular case. *Peoples Drug Stores, Inc. v. Fenton Realty Corp.*, 191 Md. 489, 493, 62 A.2d 273 (1948). What must be determined here is the intent of the parties, as shown by the written documentation and the parties' conduct during their negotiations. It is essential that the minds of the parties be in agreement on material terms in order for a contract to be established. *Marmott v. Maryland Lumber Co.*, 807 F.2d 1180, 1184 (4th Cir.1986), *cert. denied*, 482 U.S. 929, 107 S.Ct. 3214, 96 L.Ed.2d 700 (1987).

Defendant National Graphics has referred to various facts of record which support its contention that the March 29 Document was no more than a letter of intent. However, there are other facts of record which indicate that the parties intended to enter into a binding and enforceable contract when the March 29 Document was executed. This case is now before the Court on defendant's motion for summary judgment filed under Rule 56. In ruling on such a motion, the Court is not permitted to decide ultimate issues involving the weight of the evidence and the credibility of the witnesses. Rather, the facts here and the inferences to be drawn from them must be viewed in the light most favorable to plaintiff TecArt, which is the party opposing the motion. *Ballinger*, 815 F.2d at 1004–05. As the Court noted in *Ballinger*, summary judgment is seldom appropriate in cases in which particular states of mind are decisive as elements of a claim or defense and in which facts of record indicate that a sharp dispute exists as to the state of mind at issue. *Id.* at 1005.

█ As it did in *Phoenix, Abt* and *Paramount Brokers*, the Court will apply to evidence of record in this case the five factors enunciated in the *Teachers'* case. Following its review of the evidentiary materials which have been supplied, this Court concludes that defendant National Graphics is not entitled on this record to the entry of summary judgment in its favor. Disputes of material fact exist requiring that the issues raised must be decided at the trial. In *Teachers*, findings of fact were made by the Court after a trial. Similarly, the disputes of fact in this case can be resolved by the Court only after it has heard all of the relevant evidence.

Defendant places heavy reliance on the fact that the letter of transmittal of March 28, 2001 which accompanied the March 29 Document enclosed "revised copies of the Letter of Intent ('LOI')..."[5] Indeed, there are four references in this letter of transmittal to a "LOI" being enclosed. Nevertheless, the March 29, Document itself was designated a "revised Binding Letter Agreement." Moreover, Paragraph 16 is entitled "BINDING EFFECT" and stated: "In spite of this requirement for a final Purchase Agreement, the parties hereto desire this clause to be interpreted in the broadest possible terms and desire

5. The earlier letter of transmittal of March 7, 2001 contained the same language.

to bind themselves to complete the transaction described in this Agreement. . ."

Quite obviously, there exist ambiguities which cannot be resolved as a matter of law by way of a motion for summary judgment. In one breath, CEO Scudder referred to the critical document at issue as a "Letter of Intent." In the next, he and Shapiro termed it a "Binding Letter Agreement." The discrepancy is not readily explained by the record now before the Court. The intentions of the parties cannot be determined at this time as a matter of law by consideration of the written documents themselves. Although conceding that there is some ambiguity in the language of the March 29 Document, defendant argues that since the instrument in question was prepared by officers of TecArt, it must be construed against plaintiff as the drafter. However, the principle involved is not conclusive as a matter of law in this case but is merely one of many factors to be considered by the Court in determining the intentions of the parties.

█ Moreover, consideration of the context of the negotiations and the existence of open terms does not, as argued by defendant, conclusively establish that the parties did not intend to enter into a binding agreement. Although the March 29 Document contained an express provision concerning royalty payments, defendant refused to accept a similar provision in the later Purchase Agreement. Defendant notes that TecArt did not during later negotiations insist that final agreement on the issue had already been reached, but that TecArt rather proposed certain changes. Ultimately, the changes were not acceptable to defendant, and the deal faltered. Although the record here indicates that there were open terms after the March 29 Document was signed by the parties, their existence does not necessarily mean that no final agreement was reached. Where the parties have manifested an intention to make a binding agreement, the mere fact of open terms will not permit them to disavow it. *Teachers*, 670 F.Supp. at 501.

Defendant relies on this Court's opinion in *Waterfall Farm Systems, Inc. v. Craig*, 914 F.Supp. 1213 (D.Md.1995). In that case, this Court concluded that the parties did not in a letter agreement intend to bind themselves to an enforceable contract of lease. But defendant overlooks the fact that the *Waterfall* case was decided after the Court had heard all of the evidence at the trial.[6] Indeed, summary judgment had earlier been denied in that case as to the contract of lease issue. In the Memorandum and Order entered by this Court in the *Waterfall* case on April 10, 1995, the Court concluded that genuine issues of material fact existed concerning the determination whether the letter agreement in dispute was a binding and enforceable lease agreement or whether the parties intended that a later instrument would be executed which would contain necessary and essential terms not present in the letter agreement. (Slip op at 16). The similar issue presented in this case can be decided, as in *Waterfall*, only after all the pertinent evidence has been presented at a trial.

Plaintiff claims that there was partial performance on its part, indicating an intention that the document in question was a binding and enforceable agreement. After the March 29 Document was executed, TecArt did as required by its terms prepare a Purchase Agreement and a term sheet relating to the Consulting Agreement. Both documents were sent to National Graphics. Defendant argues that the performance of requirements of this

---

**6.** As noted herein, the *Teachers* case also was    decided only after a trial was held.

sort do not constitute the type of partial performance recognized by *Teachers*. The issue in question cannot be decided as a matter of law at this stage of the proceedings. Whether the facts relied upon by plaintiff support its contention that the March 29 Document is final and binding must await the development of all the facts at the trial. The final factor, namely the custom of transactions like this one, is likewise disputed by the parties. According to defendant, in a transaction of this type and magnitude, it was customary for the parties to enter into a definitive purchase agreement spelling out the specific terms and details of the purchase. Relying on the fact that National Graphics shortly after negotiating with TecArt entered into an abbreviated but admittedly binding agreement with the Bowman parties, plaintiff contends that it was not customary that a comprehensive formal purchase agreement be executed before a binding contract for the purchase of these assets would exist. In the absence of a further development of the facts, this dispute cannot be finally determined by the Court on the record here.[7]

### IV

#### *Conclusion*

For all the reasons stated, this Court has concluded that defendant is not entitled to summary judgment as to the claims asserted by plaintiff in both Count I and Count II of the complaint. Since there are disputes of material fact as to whether a binding and enforceable agreement existed between the parties, plaintiff's motion for summary judgment must be denied.

Accordingly, it is this _____ day of January, 2002 by the United States District Court for the District of Maryland,

ORDERED:

1. That defendant's motion for summary judgment is hereby denied;

2. That, pursuant to Rule 42(b), F.R.Civ.P., there will be a separate trial of the liability and damages issues in this case; and

3. That a pretrial conference is hereby scheduled in this case for *Tuesday, January 22, 2002* at 4:00 p.m. in chambers.

---

7. Defendant has also argued that it is entitled to summary judgment because there was in the alleged contract no mutuality of the parties' obligations. But the March 29 Document contemplated that there would be a due diligence investigation, and it is disputed whether the feasibility of the transaction was based on the due diligence results or was entirely discretionary. Without further development of the facts, the Court cannot conclude as a matter of law that the March 29 Document is not enforceable because of the absence of sufficient mutuality of obligation.