LINCOLN L. CLEAVES *v.* SHARP & DOHME, INC., ET AL.

[No. 27, January Term, 1934.]

*Decided March 2nd, 1934.*

The cause was argued before BOND, C. J., URNER, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Isaac Lobe Straus,* for the appellant.

*Vernon Cook* and *Charles Markell,* for the appellees.

BOND, C. J., delivered the opinion of the Court.

The appellant sued the appellees for compensation for services in connection with a consolidation or merger of the

properties of Sharpe & Dohme, Inc., and a corporation of the State of Pennsylvania known as the H. K. Mulford Company. The trial court, on appellant's demurrers to the defendants' pleas, found the declaration demurrable, and judgment was thereupon duly entered for the defendants. The declaration itself was merely one on the common counts in assumpsit, but it has been amplified by a third amended bill of particulars, and, as so amplified, is the subject of inquiry on this appeal. The sufficiency of the cause of action thus particularized is first in question (*Nelson v. Close,* 147 Md. 214, 216, 127 A. 751), and, should the declaration be found sufficient, then the demurrer to the pleas would remain to be passed upon.

The pleader here has not followed the ordinary practice of alleging only ultimate facts to be proved, but has elaborated the bill of particulars to include many circumstances, with much repetition, so that the result, spread over sixteen pages, and itself added to with a prospectus of seven pages, is a presentation the sum and substance of which are not easily worked out. To a greater extent than usually it appears necessary to interpret general words used in allegations by events alleged and by the relationship outlined. Only a much condensed summary can be attempted in an opinion.

The Sharp & Dohme corporation, of the State of Maryland, and the Mulford Company, of Pennsylvania, were two manufacturers of pharmaceutical and biological products. In the year 1928, some forty other organizations in the same business combined their resources, and threatened Sharp & Dohme with competition that was new and formidable. The plaintiff, Cleaves, of New York, who was familiar with this business, was, in September, 1928, impressed with the seriousness of the threat to Sharp & Dohme, and conceived a plan of combining that organization with those of certain other business concerns or houses in the same field, including the Mulford Company, and through a Baltimore acquaintance of Dr. A. R. L. Dohme, now one of the appellees, secured an appointment and interview with Dr. Dohme. Dohme was

president, director, chief executive, general manager, and majority and controlling stockholder of his corporation, and was authorized and empowered to contract for the corporation, as it is alleged he did contract in this case. The plaintiff enlisted the aid of a firm of bankers of New York, and with one of them laid his plan before Dohme and A. Homer Smith, vice-president of Sharp & Dohme, who had the same authority to contract for the corporation. The plaintiff's plan was that a new corporation of the same name be formed, with new issues of preferred and common stock, that the stock should be listed on the New York Stock Exchange, and then with the values given it be used to buy stock of the Mulford Company from its stockholders, and retire that stock and the stock of the older Sharp & Dohme corporation. Dr. Dohme was to be secured a controlling interest in the new corporation. Dohme and Smith "instructed, requested and directed" the plaintiff and his associated banker to work out and furnish them details of that plan, and the plaintiff and his associate did so, expending time and labor on it; and Dohme and Smith "approved and agreed" to the plan, and "instructed, requested and directed" the plaintiff to proceed in the effort to effect the combination, and efforts were made accordingly, and they were accepted, adopted, and utilized by the defendants. The associated banker consulted a banker in Philadelphia, who was in a position of influence with the Mulford Company stockholders, but the Philadelphia banker finally exhibited an unfriendly attitude. Thereafter, and until May, 1929, the defendants "continued to support and encourage" the efforts of the plaintiff and his associated bankers, accepting their labors, and Dr. Dohme declared that Sharp & Dohme would be ready to make the combination after the summer vacation.

In July of 1929, the defendants, through a group of bankers of Baltimore, Philadelphia, and New York, with whom the plaintiff had no connection, entered into a combination with the Mulford Company, on the plaintiff's plan, at least to the extent that a new corporation under the name

of Sharp & Dohme was formed to acquire the properties of the two corporations. The stock of Sharp & Dohme, the older corporation, was not retired merely upon an exchange for stock in the newer one, but was bought with new stock and $150 in cash for each share. The financial structure on which the combination was based was elaborate. The new corporation was given an authorized capital of 500,000 shares of preferred stock, divided into series, and 2,000,000 shares of common stock, all of no par value. Of one series of the preferred stock 162,500 shares, and of the common stock 260,000 shares, were issued for cash, and the proceeds, of $13,500,000, together with 225,000 shares of common stock, were issued to the stockholders of the older Sharp & Dohme corporation, providing a payment of $150 in cash, as stated, and two and a half shares of common stock of the newer corporation for each share of the older acquired. For acquisition of the Mulford Company stock, 30,400 shares of the new preferred stock and 110,700 shares of the new common stock were converted into $3,709,004 in cash, and that amount, together with 36,186 of new preferred shares and 180,927 of the new common shares, providing $61.50 in cash, three and three-fifths preferred shares, and three common shares for each share of the Mulford Company. Dr. Dohme did not receive a majority of the new stock, but, along with a large amount in cash, received 26.09 per cent. of the preferred stock and less than 21 per cent. of the common stock. Mr. Smith, who had during fourteen years prior to his connection with Sharp & Dohme been connected with the Mulford Company, became president of the new, combined corporation. The combination is alleged to have redounded greatly to their benefit and to that of the corporation now sued, both in cash and in stock of the new corporation and otherwise. The new corporation, it is alleged, assumed all obligations of the older, including that to the plaintiff.

The pleas of the defendants, now appellees, denied any engagement of the plaintiff, and alleged that his existence was not even known to any other directors of the corporation

sued. The objection on demurrer to these pleas seems to be that they amount to general issues.

The principles controlling need not be repeated at great length. An intermediary may, of course, be used in the negotiation of a contract or a dealing of any kind in any one of a variety of ways or upon any terms the principal and the intermediary agent may choose. They may agree merely that the agent shall do work for the principal in an effort to accomplish the result sought, with remuneration to be paid whether the result is accomplished or not. That is a familiar basis of employment of attorneys at law. And it may be arranged by express contract, or the obligation to pay may be implied from circumstances from which an expectation of payment may be inferred. *Brantly, Contracts* (2nd Ed.) 21; *Page v. Penrose,* 147 Md. 225, 127 A. 748. On the other hand, the arrangement may be that the agent is to earn compensation only by procuring the result. And that is the ordinary arrangement with commission agents and brokers. Commissions to be earned by them are ordinarily to recompense them for all efforts and outlays, and they are expected to go without that recompense if they do not procure the result. A broker has not a contract, strictly speaking, but only a promise from the other party to pay for the performance of an act. *Brantly, Contracts* (2nd Ed.) 44; 2 *Mechem, Agency,* sec. 2482, note; *A. L. Inst. Restatement, Agency,* sec. 1, d; *Attrill v. Patterson,* 58 Md. 226; *Hill v. Iglehart,* 145 Md. 537, 547, 549, 550, 125 A. 843.

If the parties wish, they may agree, contrary to the usual practice, that even such a broker shall receive compensation for unsuccessful efforts, or the broker may recover on a *quantum meruit* or implied contract if his efforts have been contributed under circumstances from which expectation of paying may be inferred. *Harper v. Davis,* 115 Md. 349, 353, 80 A. 1012; *Attrill v. Patterson,* 58 Md. 226, 255; 43 *A. L. R.* 1122, note; *Barnett v. Isaacson,* 4 T. L. R. 645; *Elliott v. Kazajian,* 255 Mass. 459, 461, 152 N. E. 351.

The brokers who earn compensation only on procuring a

result may be utilized on materially different terms. They may be given merely an opportunity to earn the commission by procuring the result, as when property to be sold is listed with a broker; and in such case a broker has no rights against the principal unless and until he procures the result before his opportunity or agency is recalled by the principal. *Martien v. Baltimore,* 109 Md. 260, 269, 71 A. 966; *Way v. Turner,* 127 Md. 327, 328, 96 A. 676; *Hill v. Iglehart, supra,* pages 549 of 145 Md., 125 A. 843. Or, on the other hand, they may by contract, upon consideration, be given exclusive rights to negotiate, or sell, or any other rights the parties may decide upon. *Elliott v. Kazajian, supra.* Except so far as the principal may, by contract, have parted with that freedom, the rule is that he may revoke the agency or authority at any time, with the qualification that he cannot make use of that power to cut off compensation from a broker who has earned it. *Hill v. Iglehart* and *Martien v. Baltimore, supra; Singer Co. v. Goldsborough,* 147 Md. 628, 636, 128 A. 754; *Howard v. Street,* 125 Md. 289, 300, 93 A. 923.

The allegations here, when examined in the light of these principles, seem to lack clear commitment to any one theory of recovery. It is not entirely clear whether the plaintiff grounds a right of recovery on procurement of the combination, or substantial procurement by the use of his plan and efforts, or, on the other hand, on an implied right to compensation for his plan and his efforts expended in trying to procure the result sought. However this may be, some grounds may be disposed of briefly. The allegations taken together do not show that the plaintiff procured the combination or merger of the corporations for the defendants, or even brought the parties concerned in the two corporations into negotiation. On the contrary, it is alleged that he did not. He does not appear to have contributed to the achievement of the combination at all, whatever efforts he may have expended in trying to do so. While alleging that his plan for a combination was used, the further allegations show that it was not. A new corporation, using the name he contem-

plated, was later formed, and the stock of the older corporations was in fact acquired, and a combination or merger of the two corporations was thus effected. But the plaintiff does not appear to have had any connection with working out the complex financial plan on which the combination was actually affected. His plan for formation of a new corporation to acquire the older ones by exchange of new stock for old would seem, indeed, to have been no more than an outline of one of the familiar, obvious methods of combining corporations, one that would be in the minds of any men experienced at all in such affairs, and that could not reasonably be considered to add anything to a suggestion that there be a combination. There is, again, no showing that substantial accomplishment of the result by the plaintiff, or any substantial approach to accomplishment, was deprived of its consummation by the termination of agency by the defendants' entering into a combination through other agencies. It is, on the contrary, alleged that approaches made for the plaintiff toward the Mulford Company stockholders ended in an unfriendly attitude on the part of a banker applied to. There being, then, on this declaration as particularized, no showing of a ground for recovery in procurement of any result by the plaintiff, if any ground is shown it must be found in allegations of a right to be compensated for services rendered in efforts to procure the combination. The argument on behalf of the plaintiff or appellant has been addressed largely to this latter theory of recovery.

The allegations from which that right and the corresponding obligation on the defendants must be deduced, if at all, are, as previously summarized, that, when the plaintiff obtained the interview with the defendants Dohme and Smith, and suggested the combination or merger, and the plan he had in mind, they "instructed, requested and directed" him to work out and furnish the details of the plan, that at another time they "approved and agreed to" the plan, and "instructed, requested and directed" the plaintiff to proceed with it, and still later, until May of 1929, "continued to sup-

port and encourage" the plaintiff's efforts to procure a combination, accepted and adopted them, and were benefited by them. There is no allegation of an express undertaking to pay for that work irrespective of accomplishment of the result and the right to commissions. The ground for recovery could be only that of a *quantum meruit* on an implied obligation and right to payment.

On this point, the source of difficulty is in the adoption of expressions commonly used in statements of the principle that one for whom labor is performed at his request, or by whom it is accepted, is under an implied obligation to pay for it. It is a rule with an important qualification, that this obligation cannot be implied when the circumstances do not support an inference of expectation of the parties that there would be payment. *Brantly, Contracts* (2nd Ed.) 21; *Harper v. Davis,* 115 Md. 349, 353, 80 A. 1012. And to determine fairly on which side of that line of distinction the case here falls, it is especially necessary to bring those expressions to the test of the events narrated and the actual relation of the parties, for they would differ in legal significance in different situations. If an attorney at law is requested to do work to bring about some transaction between corporations, then, assuming there is no express stipulation determining compensation, payment is expected and allowed for any work done. On the other hand, if a manufacturer is requested to prepare bids and samples, then, even though the bids and samples be approved and accepted, no payment is expected or allowed for work done unless the goods are made and delivered, when the price or reasonable value is recoverable. What do the expressions signify in a case of one who comes as a broker proposing to bring about a combination of the business of the persons approached with another business, and is requested to prepare and present his plan in detail, whose plan as far as it goes is then approved by the person approached, who is authorized to proceed to effectuate the purpose, and whose efforts to do so are approved, encouraged, and accepted, but who does not effectuate that

purpose? In the situation of the parties, can such allegations reasonably be said to show an undertaking by the client to pay for the preliminary plans and intermediate efforts expended by the broker? Ordinary practice would seem to give rise to just the contrary expectation. It would not be understood that the broker was undertaking employment to make plans and perform preparatory work and merely expend efforts for the client, but only employment to achieve the result he proposes. And the allegations of this bill of particulars, it seems to the court, may fairly be regarded as going no further. The defendants may be said merely to have called upon the plaintiff as an offeror, or authorized him, first, to elucidate his offer, and then to go forward and procure the result he proposed if he could. A mere proposal for entering into a combination or merger, without detailed terms, would be an incomplete one, not ready for consideration as a basis of decision or action by the person approached, and might be regarded as not presented, or even formed, until elaborated with details. It is at least consistent with the allegations that the parties did not intend any obligation on the defendants to pay other than an ordinary broker's compensation for accomplishment of the result proposed, and, this being true, they fail to show ground for recovery of anything else. A pleader cannot be supposed to have put forward anything less than the full strength of his case, and orderly judicature requires that he be not permitted to go forward with an adequate case by use of equivocal allegations; therefore such allegations are to be construed against him. 1 *Poe, Pl. & Pr.,* sec. 557; *Maenner v. Carroll,* 46 Md. 193, 215; *Steinwedel v. Hilbert,* 149 Md. 121, 126, 131 A. 44; *Frisch v. Baltimore,* 156 Md. 310, 312, 144 A. 478; *Miller v. West,* 165 Md. 245, 167 A. 696.

Taking these views of the allegations as a whole, this court is of opinion that the trial court acted correctly upon the demurrers. Other possible deficiencies in the pleadings need not be discussed.

*Judgment affirmed, with costs.*