UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ABT ASSOCIATES, INCORPORATED,
    *Plaintiff-Appellant,*

v.

JHPIEGO CORPORATION,
    *Defendant-Appellee.*

No. 00-2026

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Alexander Harvey II, Senior District Judge.
(CA-99-3238-H)

Argued: April 5, 2001

Decided: May 17, 2001

Before WIDENER and LUTTIG, Circuit Judges, and
Rebecca Beach SMITH, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Robert Kelso Taylor, PATTON BOGGS, L.L.P., Washington, D.C., for Appellant. Susan Martielli, Wesley Daniel Blakeslee, Office of the Vice President and General Counsel, THE JOHNS HOPKINS UNIVERSITY, Baltimore, Maryland, for Appellee. **ON BRIEF:** Michael T. Wood, PATTON BOGGS, L.L.P., Washington, D.C., for Appellant. Frederick G. Savage, Office of the Vice President

and General Counsel, THE JOHNS HOPKINS UNIVERSITY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Appellant Abt Associates, Inc. ("Abt") appeals the district court's grant of summary judgment to appellee JHPIEGO Corporation ("JHPIEGO") in this action alleging a breach of contract and various torts. For the reasons set forth below, we affirm.

I.

In June 1998, the United States Agency for International Development ("USAID") issued a formal request for the submission of applications to enter into a five-year cooperative agreement (the "Award") to provide services for USAID's maternal and neonatal health care efforts in developing countries (the "MNH Program"). Over the course of several weeks following USAID's request for applications, JHPIEGO met with Abt and three other members of a joint bidding group (the "Bidding Group") to discuss the structure of a prospective project team and to prepare an application. The members of the Bidding Group agreed that JHPIEGO would be the prime contractor in applying for the Award. They subsequently worked together to prepare the application, which contained two parts — a questionnaire concerning the strategies that the Award recipient would use to further the goals of the MNH Program, and a cost application setting forth a model budget.[1] JHPIEGO submitted the application to USAID on July 13, 1998.

---

[1] Because the extent of the services offered by the MNH Program would not be known until after the Award was made, none of the applicants for the Award knew for certain the particular countries in which their services would be needed or the amount of funding they would receive.

Shortly before submitting the application, JHPIEGO sent a "Teaming Agreement" to Abt and the other members of the Bidding Group. The agreement provided that JHPIEGO would have "the full responsibility to prepare and submit the application" to USAID, with each member of the Bidding Group assisting in preparing that portion of the application pertaining to its area of expertise. The Teaming Agreement also stated that if JHPIEGO received the Award, it would use "its best efforts to negotiate a subagreement with the Subrecipients for work" on the MNH Program. J.A. 177-82. All of the members of the Bidding Group except Abt signed the Teaming Agreement. Thus, seeking confirmation of Abt's commitment to the Bidding Group, JHPIEGO sent Abt a letter on July 1, 1998, which stated that "[w]e are very pleased that Abt has agreed to partner with JHPIEGO on the technical bid in response to the USAID-funded Maternal and Neonatal health Project." J.A. 184. The letter asked Abt to confirm "our partnership agreement as soon as possible." Abt returned a letter stating that "Abt Associates Inc. is pleased to be a partner on the JHU Team lead by JHPIEGO . . . should the JHU Team be selected to implement this project." J.A. 187.

JHPIEGO was notified on September 28, 1998 that it had been selected as the recipient of the USAID Award. USAID and JHPIEGO subsequently entered into a Cooperative Agreement that provided for incremental funding of the Award — $4.7 million in the first year, with funding in subsequent years contingent upon transfers of funds from USAID's overseas missions. After entering into the Cooperative Agreement with USAID, JHPIEGO met with Abt to discuss the terms of a subagreement between them. In the interim, JHPIEGO and Abt signed a temporary "pre-subagreement" designed to pay Abt for its work on the MNH Program "pending finalization of the formal subcontract between JHPIEGO and Abt." J.A. 536-37. The initial pre-subagreement covered the period from October 6, 1998 to October 30, 1998, and was later amended to extend its coverage to November 6, 1998.

During the period covered by the pre-subagreement, Abt and JHPIEGO exchanged several draft subagreements and negotiated such terms as the period of the subagreement, Abt's fees for its services, and the number of Abt employees involved with the MNH Program. On November 18, 1998, JHPIEGO sent Abt a revised draft

subagreement in which JHPIEGO changed many, but not all, of the earlier provisions that Abt found objectionable. In a letter accompanying that draft subagreement, JHPIEGO requested that Abt submit a budget for the first year of the program by November 20. When Abt failed to do so, JHPIEGO informed Abt that differences concerning staffing and Abt's profit and cost sharing allocation precluded them from entering into a subagreement.[2]

Abt sued JHPIEGO for breach of contract and various torts under Maryland law. Following extensive discovery, the district court granted summary judgment to JHPIEGO on all counts of Abt's complaint, and this appeal followed.

II.

Abt's principal argument is that JHPIEGO breached a contract with Abt to bid for *and* perform the MNH Program together, though it is undisputed that the parties did not sign a comprehensive written contract that evinces the terms of their relationship.[3] The lack of a comprehensive writing is all the more striking given the scope and significance of the alleged agreement — a five-year, multimillion-dollar, multinational contract to provide services to a major government agency. Nevertheless, Abt claims that a jury could find the existence of a binding agreement between Abt and JHPIEGO to implement the MNH Program under either of two theories. First, Abt contends that the parties entered into a binding oral agreement governing the MNH Program work. Second, Abt argues that the exchange of letters with JHPIEGO established an enforceable agreement to partner on the MNH Program, and that the precise terms of the agreement are demonstrated by the application submitted by JHPIEGO to USAID. Because we conclude that no jury could find, under either theory, that the parties entered into a binding agreement to perform the MNH Program work, we affirm the district court's grant of summary judgment to JHPIEGO on Abt's claim of breach of contract.

---

[2]JHPIEGO successfully negotiated subagreements with the other members of the Bidding Group.

[3]The only comprehensive writing in the record describing the relationship between Abt and JHPIEGO is the Teaming Agreement dated June 25, 1998, which Abt refused to sign.

A.

First, the record belies Abt's argument that the parties entered into an enforceable oral contract to partner on the MNH Program work. To establish that a binding contract was made, a plaintiff must adduce evidence of an offer and an acceptance, and of a meeting of the minds as to the essential terms of the contract. *Safeway Stores, Inc.* v. *Altman*, 463 A.2d 829, 831 (Md. 1983). The deposition testimony cited by Abt in support of the existence of an oral contract neither recounts the necessary sequence of offer and acceptance nor suggests mutual assent to the essential terms of the supposed agreement. On the contrary, the deposition testimony establishes that significant open terms remained as of July 13, 1998, the date by which Abt now claims a binding oral contract was made. J.A. 1260-67 (Abt's fee and cost-sharing contribution remained open issues); J.A. 1283 (location of program office not decided); J.A. 1404 (staffing issues remained unresolved as of July 13, 1998).

B.

We also reject Abt's argument that a binding agreement governing performance of the MNH Program work was created by an exchange of letters, because material terms remained unresolved as of July 1998, and, indeed, throughout the course of the negotiations between the parties. While a contract may be entered into by letters evincing an offer and an acceptance, the terms of such a contract must be "in all respects definitely understood and agreed upon," *Peoples Drug Stores, Inc.* v. *Fenton Realty Corp.*, 62 A.2d 273, 275 (Md. 1948), and must be discernible from the face of the letters or, in certain circumstances, from parol evidence. *Johns Hopkins Univ.* v. *Ritter*, 689 A.2d 91, 93-94 & n.4 (Md. 1996) (conversations between parties admissible to show terms of agreement where letters forming agreement did not "purport to be a complete and fully integrated contract").

In Abt's view, the requirement of an offer was satisfied by JHPIEGO's letter stating that "[w]e are very pleased that [Abt] has agreed to partner with JHPIEGO on the technical bid in response to the USAID-funded [MNH Program]." J.A. 184. Abt argues that it accepted JHPIEGO's offer — thus creating a binding contract — by returning a letter that stated that "Abt Associates Inc. is pleased to be

a partner on the JHU Team led by [JHPIEGO] on the implementation of the Maternal and Neonatal Health RFA . . . should the JHU Team be selected to implement this project." J.A. 187. Yet the letters cited by Abt are devoid of *any* terms concerning the implementation of the MNH Program. In the absence of evidence of the essential terms of an agreement, we agree with the district court that the exchange of letters did not create a valid contract to perform the MNH Program work.

Nor are those terms furnished extrinsically by JHPIEGO's application to USAID, for that application merely "*illustrates* how the MNH Team would develop and implement a *model country program* that takes into consideration . . . the MNH strategic objective." J.A. 204 (summary portion of application) (emphasis added). The application to USAID, by its terms, does no more than demonstrate how the Bidding Group would approach the MNH Program in a hypothetical country. *See also* J.A. 702 (deposition testimony that JHPIEGO and Abt, in preparing the application, did not know the countries in which the MNH Program would be implemented); J.A. 708, 712-13 (number of countries served by the MNH Program would not be determined until after the Award was made). Since the full amount of the Award, the countries served by the MNH Program, and the costs, expenses, and staffing needs of the Program could not be determined until after the Award was made, the illustrative budget in the application does not represent the parties' binding agreement as to the key terms of performing the MNH Program work.

Accordingly, because the record does not support Abt's contention that the parties mutually assented to the terms of an agreement to implement the MNH Program together, we affirm the district court's grant of summary judgment to JHPIEGO on Abt's claim of breach of contract.[4]

---

[4]Because the parties never agreed to the essential terms of a contract to perform the MNH Program work, we also affirm the district court's grant of summary judgment to JHPIEGO on Abt's claims that JHPIEGO tortiously breached such contract and that JHPIEGO breached a duty of good faith and fair dealing arising out of such contract. *Cf. Howard Oaks, Inc.* v. *Maryland Nat'l Bank*, 810 F. Supp. 674, 677 (D. Md. 1993) (explaining that Maryland law does not recognize a cause of action for breach of a duty of good faith and fair dealing in the absence of a contract between the parties).

### III.

Abt next asserts a series of claims seeking to recover under various quasi-contract and tort theories. We agree with the district court that these claims are meritless, and we therefore affirm the district court's grant of summary judgment to JHPIEGO on the remaining counts of Abt's complaint.

First, Abt seeks to recover under theories of quantum meruit and unjust enrichment for its work on the Bidding Group's application to USAID. A plaintiff may not recover under these theories unless he had a reasonable expectation of being paid for the benefit he conferred upon the defendant. *Cleaves* v. *Sharp & Dohme, Inc.*, 171 A. 374, 377-78 (Md. 1934). Here, Abt could not have had a reasonable expectation of payment for its effort on the application, which is a cost of business akin to a manufacturer's expenses in vying for a sale. *Cf. id.* at 378 (manufacturer has no reasonable expectation of payment for cost of preparing bids and samples). Rather, Abt's reasonable expectations were limited to payment for any work actually performed on the MNH Program after the date of the Award and to the opportunity to negotiate a long-term subagreement with JHPIEGO. Pursuant to the pre-subagreement between the parties, Abt was paid $42,800 for post-Award work on the MNH Program between October 6 and November 23, 1998. J.A. 536-37. Moreover, during that time, the parties attempted unsuccessfully to negotiate a final subagreement.[5] Because Abt's only reasonable expectations were fulfilled, the district court properly granted summary judgment to JHPIEGO on Abt's quantum meruit and unjust enrichment claims.

---

[5]To the extent Abt now argues that JHPIEGO breached a duty to negotiate a subagreement in good faith, such claim is not asserted on the face of Abt's complaint. J.A. 6-19. Even if it were, Abt has failed to adduce evidence that JHPIEGO breached any duty of good-faith negotiation. On the contrary, the parties negotiated extensively for over a month. During that time, they exchanged several draft subagreements in which JHPIEGO made numerous concessions to Abt. J.A. 571-72 (letter from JHPIEGO to Abt detailing concessions regarding, *inter alia*, scope of work, period of performance, cost rate, and intellectual property rights). The parties' ultimate inability to reach a final agreement does not, standing alone, create a genuine issue of material fact as to JHPIEGO's good faith in the negotiations.

Second, Abt argues that the district court erred in granting summary judgment on its claim of promissory estoppel. To recover under a theory of promissory estoppel, a plaintiff must demonstrate reliance upon "a clear and definite promise" by the defendant. *Pavel Enters, Inc.* v. *A.S. Johnson Co.*, 674 A.2d 521, 532 (Md. 1996). Abt has proffered no evidence that JHPIEGO promised it a role in the MNH Program as a partner pursuant to the supposedly binding terms set forth in the application to USAID. *See supra* at 4-6. Absent evidence of "a clear and definite promise" by JHPIEGO, we affirm the district court's grant of summary judgment on this count.

Finally, Abt contends that JHPIEGO committed fraud by making numerous misrepresentations about Abt's intended role in the MNH Program, with the purpose of fraudulently inducing Abt to collaborate with JHPIEGO on the application for the Award. The record, however, contains no evidence that JHPIEGO's alleged misrepresentations were made with knowledge as to their falsity or with reckless indifference as to their truth. *Everett* v. *Baltimore Gas and Elec. Co.*, 513 A.2d 882, 889-90 (Md. 1986) (setting forth the elements of fraud under Maryland law). Thus, the district court properly granted summary judgment to JHPIEGO on Abt's claim of fraud.

## *CONCLUSION*

For the reasons stated herein, we affirm the judgment of the district court.

*AFFIRMED*